UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LOUIS CHANDLER #963822,

        Petitioner,                Case No. 2:19-cv-263

v.                                     Hon. Paul Maloney
                                         U.S. District Judge

JACK KOWALSKI,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a habeas corpus action brought by state prisoner Louis Chandler under 28 U.S.C. § 2254. Chandler is incarcerated with the Michigan Department of Corrections based upon his jury trial conviction of two counts of first degree criminal sexual conduct, in violation of Mich. Comp. Laws §750.520b(2)(b). These convictions involved his foster daughter, who was approximately 8 years old at the time of the offenses. Chandler was sentenced to two prison terms of 25 to 75 years.

On December 30, 2019, Petitioner filed his habeas corpus petition. The petition raises four grounds for relief, as follows:

    I.    The trial court's denial of counsel's requests for a continuance violated Chandler's due process right to present a defense.

    II.   Chandler was denied his due process right to present a defense where the trial court excluded Chandler's witnesses and limited his ability to cross examine the complainant.

> III. The propensity testimony admitted at trial was so prejudicial it violated Chandler's due process right to a fundamentally fair trial.
>
> IV. The combined effect of the due process errors frustrated Chandler's right to present a defense in violation of due process.

(Pet., ECF No. 1, PageID.6-10.) Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are procedurally defaulted, noncognizable on habeas review, or meritless. Upon review, and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless or procedurally defaulted. Accordingly, I recommend that the petition be denied.

## Discussion

### II. Procedural history

Chandler appealed his convictions to the Michigan Court of Appeals. The Michigan Court of Appeals remanded Chandler's due process claims to the trial court for an evidentiary hearing. (ECF No. 9-10, PageID.500 (Michigan Court of Appeals Order dated July 7, 2017).) The trial court conducted an evidentiary hearing and denied Chandler's motion for a new trial. (ECF No. 9-10, PageID.554-555 (trial court's opinion and order, and judgment); ECF No. 9-10, PageID.758-781 (evidentiary hearing transcript after remand).) After remand, the Michigan Court of Appeals affirmed the trial court's denial of the motion for a new trial. (ECF No. 9-10, PageID.468-476 (Michigan Court of Appeals opinion after remand, dated December 19, 2017).) The Michigan Supreme Court denied leave to appeal on October 2, 2018. (ECF No. 9-11, PageID.857.)

### III. AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in

state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made

4

by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

5

### IV. Denial of continuances and the exclusion of the Hamblins and Kieliszewski's testimony (Arguments I and II)

Chandler argues that the trial Court's denial of his requests for trial continuances violated his due process right to present a defense. Trial began 75 days after Chandler pleaded not guilty. (ECF No. 9-10, PageID.470.) Defense counsel moved three times for a trial continuance. Each request was denied by the trial court. (*Id.*) Trial counsel requested more time because he was seeking to review the victim's foster care records. (*Id.*) Counsel received the foster care records 10 days before trial, and on the morning of trial he obtained records that indicated that the victim made false allegations against a prior foster parent. (ECF No. 2, PageID.22, ECF No. 9-3, PageID.254-256.) The trial court excluded the prior foster parents (the Hamblins) testimony. (ECF No. 9-3, PageID.258.) The trial court excluded defense expert psychologist Jeffrey Kieliszewski from testifying due to the late disclosure of the expert's name. (*Id.*)

The Michigan Court of Appeals agreed with Chandler that the trial court abused its discretion by denying his requests for continuances of the trial and excluding testimony. Nevertheless, the Court of Appeals found that the trial court's errors did not rise to the level of a due process violation because Chandler could show no prejudice arising out the denial of the requests for continuance or from the exclusion of the Hamblins or Kieliszewski's testimony. The Michigan Court of Appeals explained:

> In particular, the only potential prejudice identified by defendant consists of the exclusion of testimony from the Hamblins and Kieliszewski. Defendant was able to develop their proposed testimony on remand, and considering their testimony at the evidentiary hearing,

6

it is clear that exclusion of this evidence did not affect the outcome of trial.

At the evidentiary hearing, the Hamblins offered their opinions that the victim was not a truthful person, and such opinion testimony would generally be admissible under MRE 608(a). Their testimony also involved specific descriptions of the victim's past fabrications of mistreatment, which she made after the Hamblins told her they intended to adopt her. Assuming arguendo that this evidence was admissible under MRE 404(b) or another rule, its exclusion did not affect the outcome of the trial. Even without the Hamblins' testimony, defense counsel challenged the victim's credibility at trial by highlighting inconsistencies between her statements in 2010 and 2015, and questioning the victim about past lies. Additionally, defendant's wife testified that, when the victim first came to the house, workers told her and defendant that the victim made allegations against past foster parents and to "watch" her. Further, defendant's wife testified that the victim made the allegations against defendant after being told that defendant and his wife were going to adopt her. In other words, the exclusion of the Hamblins' testimony did not prevent defendant from presenting his arguments that the victim fabricated her claims and that she did so because she did not want to be adopted.

With regard to Kieliszewski, in defendant's initial appellate brief, defendant asserted that Kieliszewski would testify about RAD [Reactive Attachment Disorder] and its relationship to lying. But, on remand, Kieliszewski indicated that lying was not a "criteria" of RAD; and, more generally, Kieliszewski would not have been able to offer an expert opinion of the victim's credibility. *People v. Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014). On remand, Kieliszewski also discussed forensic interviewing protocols. He explained that the protocols highly discourage having a support person in the room and that they recommend videotaping the interview (or at a minimum taking detailed notes). The interview with the victim was not videotaped and her adopted mother was present for the interview. On remand, Kieliszewski also discussed memory and child sexual abuse, including the fact that memory degrades over time and that memory confabulation, in which a person "fills in the blanks" with fake memories, can occur. However, while Kieliszewski likely could have offered expert testimony regarding forensic interview protocols and memory generally, see MRE 702, the exclusion of his testimony did not affect the outcome. Defense counsel was able to question the prosecutor's expert about memory, and the prosecutor's expert acknowledged that children sometimes lie and that those lies can become actual memories. Likewise, defense counsel

7

questioned the forensic interviewer at trial, who conceded that having a support person was not recommended. Moreover, to some extent, Kieliszewski described "best practices;" and, while the interview was not taped, notes were taken. On this record, Kieliszewski's testimony would not have changed the outcome.

More generally, we note that the victim's testimony was not the only evidence at trial. The record also shows that defendant had committed acts of criminal sexual conduct against other young girls, including his step-granddaughter, his sister, and a family friend. This pattern of conduct by defendant spanning almost 50 years bolstered the victim's credibility and supported a propensity inference. See *People v Watkins*, 491 Mich 450, 491; 818 NW2d 296(2012); *People v Solloway*, 316 Mich App 174, 193; 891 NW2d 255 (2016). Considering this other evidence, any error in the denial of defendant's requests for an adjournment as well as the exclusion of testimony from the Hamblins and Kieliszewski does not entitle defendant to relief.

(ECF No. 9-10, PageID.472-474 (notes omitted).)

The determination to grant or deny a request for a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The unjustifiable denial of a continuance may result in the denial of the right to present a defense. *Id.* The circumstances of each case must be evaluated to determine whether the denial of a continuance was so arbitrary that it violated due process. *Id.* Petitioner must establish actual prejudice "by showing that a continuance would have made relevant witnesses available or added something to the defense." *United States v. Harbour*, 417 Fed. Appx. 507, 513 (6th Cir. 2011) (quoting *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997)).

8

It is indisputable that under federal law a criminal defendant has the right to "a meaningful opportunity to present a complete defense." *California v. Trombetta,* 467 U.S. 479, 485 (1984); *see also Chambers v. Mississippi,* 410 U.S. 284, 294 (1973).

> The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment even though it is not expressly described in so many words: "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

*Taylor v. Illinois,* 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas,* 388 U.S 14, 19 (1967)). However, the right to present a defense is not absolute. *Id.* at 409. A judge may "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury", or may exclude evidence that is repetitive or only marginally relevant. *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

The Michigan Court of Appeals determined that Chandler could show no prejudice despite the trial court's error in denying defense counsel's requests for continuances, limiting testimony, and in excluding witnesses. For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438,

9

449 (1986)). There must be more than a "reasonable possibility" that the error was harmful. *Brecht*, 507 at 637 (internal quotation marks omitted). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

The Michigan Court of Appeals determined that the Hamblins' testimony would have been admissible generally under MRE 608(a) and likely under MRE 404(b). (ECF No. 9-10, PageID.472.) Their testimony concerned the victim's past fabrications of mistreatment against the Hamblins. (*Id.*) The Court determined that defense counsel brought out similar testimony during trial by highlighting inconsistencies of the victim's statements in 2010 and 2015 and by questioning the victim about past lies. (*Id.*, PageID.473.) Chandler's wife also testified that she was warned by the victim's past foster parents that the victim had made allegations and to "watch" her. (*Id.*) Chandler's wife testified that the victim made up lies after they told her they would adopt her because she did not want to be adopted. (*Id.*) The Court determined that the Hamblins' testimony would not have changed the outcome of the trial. (*Id.*, PageID.474.)

Similarly, the Michigan Court of Appeals determined Kieliszewski's testimony would not have changed the outcome of the trial because his testimony was limited and general. (*Id.*, PageID.474.) At the evidentiary hearing Kieliszewski testified that lying was not a "criteria" of RAD, nor could he offer an expert opinion regarding the

victim's credibility. (*Id.*) Kieliszewski could have offered testimony regarding forensic protocols such as recommending videotaping the interview, taking detailed notes, and to discourage having a support person present. (*Id.*) Defense counsel elicited testimony about the prosecutor's expert's memory and forensic protocols generally. (*Id.*) The expert testified at trial that having a support person during the interview was not recommended and that children sometimes lie and those lies become their actual memories. (*Id.*) In view of the totality of the trial testimony and evidence, the Court of Appeals determined that the exclusion of the Hamblins and Kieliszewski as trial witnesses did not change the outcome of the trial. (*Id.*)

This Court is aware that predicting the impact of a witness's live testimony is difficult. Each witness reacts differently to the pressures of trial, and a jury's collective credibility determination might shift on a small issue. Nevertheless, in this habeas proceeding, the Court must determine whether the Michigan courts erred by applying an unreasonable application of clearly established federal law or made an unreasonable determination of the facts. The Michigan Court of Appeals correctly determined that Chandler did not suffer any actual prejudice as a result of the trial court's denial of his request for continuances and by the exclusion of the Hamblins and Kieliszewski's testimony. In the opinion of the undersigned, The Michigan Court of Appeals decision (1) was not contrary to or did not involve an unreasonable application of clearly established federal law, or (2) was not based on an unreasonable determination of the facts.

11

## V. Prior bad acts testimony (claim III)

Chandler argues that the Court erred by allowing the testimony of his sister and a family friend who each testified that they were molested by Chandler when they were young girls. Chandler argues that the admission of this evidence denied fundamental fairness because it was egregious and unfairly prejudicial. The Michigan Court of Appeals reviewed for plain error because Chandler made no objection to the admission of this testimony during trial. (*Id.*, PageID.475.) The Court noted that Chandler also made a due process argument in addition to arguing that the evidence should be excluded under MRE 405 due to temporal proximity, reliability, and prejudice. (*Id.*) The Court denied his arguments by explaining:

> The charged conduct in this case involved digital-vaginal penetration perpetrated by defendant against the 8-year-old victim while she was living in his home as his foster daughter. In comparison, NJK, who was defendant's sister, testified that defendant touched her breasts and had her touch him when she was approximately 8 to 10 years old. Weighing the *Watkins* factors, NJK's testimony was not overly prejudicial. Although the temporal proximity of the other acts involving NJK was almost 50 years, this factor alone is not dispositive, *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011), and the other considerations weighed in favor of the testimony's probative value. NJK was approximately the same age as the victim when the abuse occurred, both incidents involved sexual touching by defendant, and both victims lived in the same household as defendant. NJK's testimony thus tends to establish defendant's propensity to sexually touch young female members in his household. As noted in *Watkins*, the propensity inference weighs "in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. In addition, the trial court provided a jury instruction regarding the evidence, and a limiting instruction lessens the potential for prejudice because "jurors are presumed to follow their instructions." *People v Mann*, 288 Mich App 114, 118; 792 NW2d 53 (2010). In sum, admitting NJK's testimony was within the range of principled outcomes. *Daniels*, 311 Mich App at 265. Defendant has not shown plain error. *Carines*, 460 Mich at 762-765.

> With respect to JH, similar reasoning supports the admission of her testimony. JH testified that defendant touched the outside of her genital areas, under her clothing, when she was approximately 10 years old. Although JH was not related to defendant or living in his home, JH's mother knew defendant, and the incident occurred inside defendant's home when JH was invited over for dinner. JH was a similar age as the victim, and the touching of her genital area was similar to the digital-vaginal penetration in the charged offense. Thus, JH's testimony showed defendant's propensity to commit sexual crimes against young girls, specifically within his own house. The incident occurred approximately 17 years before trial; however, the passage of time and JH's relationship with ZB's mother did not make her testimony overly prejudicial particularly when the trial court also provided a jury instruction as noted above. Overall, admission of JH's testimony was within the range of principled outcomes, and the trial court did not abuse its discretion by admitting JH's testimony. *Daniels*, 311 Mich. App. at 265. Defendant has not shown plain error.

(*Id.*, PageID.476.)

Respondent argues that Chandler procedurally defaulted this claim because he failed to object to the admission of this testimony at trial. After expressly noting Chandler's default in failing to object, the Michigan Court of Appeals then reviewed the claim for plain error, finding none. In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009); *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006). Chandler procedurally defaulted this claim due to his failure to make a contemporaneous objection during trial to NJK and JH's testimony. *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011) (petitioner procedural defaulted habeas claims by failing to make a contemporaneous objection

during trial and the state court's plain error review prevented the state courts from considering the merits of the claim).

Because Petitioner procedurally defaulted his federal claims in state court, he must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

First, Chandler fails to support a credible claim of actual innocence. Second, Chandler does not show cause for his failure to object by pointing to "some objective factor external to the defense" that prevented him from complying with the rule. *Murray v. Carrier*, 477 U.S. 478, 495 (1986). In the opinion of the undersigned, Chandler's failure to set forth cause for his procedural default requires dismissal of these procedurally defaulted claims.

Additionally, Chandler's claims are based upon evidentiary rulings under state law. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v.*

*McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

Finally, assuming Chandler presented cognizable habeas claims regarding the propensity testimony, his claims fail to support a violation of the Constitution.

15

Chandler recognizes that his state law evidentiary claims are not cognizable and characterizes his claim as due process violations. There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

It is the opinion of the undersigned, that because there was no constitutional violation in the admission of evidence (bad acts), the state court decision was "far from" an unreasonable determination of the facts considering the evidence presented. *Clark v. O'Dea*, 257 F.3d 498, 502 (6th Cir. 2001).

### VI.   Combined effect of evidentiary errors (claim IV)

Chandler argues that by excluding his witnesses, admitting bad acts evidence, and limiting his cross-examination of the victim, the trial court frustrated his right

16

to present a defense. Chandler argues that the effect of these multiple errors raises "grave doubt whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neil v. Balcarcel*, 933 F.3d 618 (6th Cir. 2019) (notes omitted).

First, Chandler never exhausted his combined error/combined prejudice claim in the state courts, so for that reason his claim is unexhausted and is barred from federal review. *Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006). At the very least, Chandler's failure to raise this claim in the state courts is procedurally defaulted. *Id*. For the reasons stated above, Chandler has failed to present Constitutional error and the cumulative effect of the alleged errors fail to support a different result. *Id*. "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *see also Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("Nonetheless, the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."). Finally, because I concluded above that the individual claims are without merit, Petitioner cannot show that the cumulative error, combined error, or combined prejudice violated his constitutional rights. *Seymour*, 224 F.3d at 557.

## VII. Conclusion

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

Dated: February 3, 2023

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).